667 F.2d 754
 George W. NYBERG, Nancy R. Nyberg, Fern Arpi, William A.
Arpi, Rachel Arpi, Dr. Charles J. Mock, Dr. Charles A.
Tietz, Melodie J. Wilson, James E. Williams on behalf of
themselves and all others similarly situated, Appellees,
v.
The CITY OF VIRGINIA and Lewis A. McMillan, Mrs. Joyce
Fleming, Raynold Lahti, Fred Teller, Virginia Municipal
Hospital Commission and Norman Kaye, Virginia Municipal
Hospital Administrator, Appellants.
 No. 80-2132.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1981.
Decided Jan. 11, 1982.
 
 O. C. Adamson, II (argued), Minneapolis, Minn., for appellants; Greenberg, Bloomquist & Colosimo, Ltd., Virginia, Minn., of counsel.
 Eve Paul, Dara Klassel, Planned Parenthood Federation of America, Inc., New York City, for amicus curiae Planned Parenthood Federation of America, Inc.
 Sylvia Law, New York City, Nadine Taub (argued), Women's Rights Litigation Clinic, Rutger's University School of Law, Newark, N.J., for amicus curiae, APHA.
 Jeanne M. Forneris (argued), Halverson, Watters, Bye, Downs & Maki, Ltd., Duluth, Minn., for appellees; Linda Ojala, Minnesota Civil Liberties Union, Minneapolis, Minn., Janet Benshoof, Reproductive Freedom Project, American Civil Liberties Union Foundation, New York City, of counsel.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and HUNTER,* Senior District Judge.
 LAY, Chief Judge.
 
 
 1
 The sole issue presented by this appeal is whether the district court erred in refusing to vacate an earlier injunction entered by the federal district court against the Hospital Commission of the City of Virginia from implementing a resolution prohibiting staff doctors from using the facilities of the Virginia Municipal Hospital for any abortions except for those required to "save the life of the mother."
 
 
 2
 The earlier injunction was entered in 1973. Nyberg v. City of Virginia, 361 F.Supp. 932 (D.Minn.1973), aff'd, 495 F.2d 1342 (8th Cir. 1974), rehearing en banc denied, 495 F.2d 1342 (8th Cir. 1974), (Gibson and Heaney, JJ., dissenting), cert. denied, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974) (Nyberg I ). Defendants in the original action (hereinafter the City) now claim that recent developments relating to the constitutional restriction on abortions have changed the constitutional bases relied on in Nyberg I. They urge that they are now entitled to equitable relief under Fed.R.Civ.P. 60(b)(5) and (6). We must respectfully disagree; we affirm the decision of the district court.
 
 
 3
 Plaintiffs Mock and Tietz are physicians and staff members at the Virginia Municipal Hospital. The hospital is operated by the City of Virginia, Minnesota, and is governed by the Hospital Commission. On February 5, 1973, the Hospital Commission attempted to proscribe by resolution the use of hospital facilities for all abortions except for those "required to save the life of the mother." Plaintiffs sought relief alleging infringement of their constitutional rights. The late Honorable Philip Neville, United States District Court Judge, entered an order enjoining defendants from implementing the resolution. The injunction requires the hospital facilities to be made available to any duly licensed physician for the performance of abortions within and subject to the rules and principles stated in Roe v. Wade, 410 U.S. 113, 164, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973). On appeal, this court held the resolution unconstitutional and affirmed the district court's opinion. Nyberg I, supra.
 
 
 4
 On August 13, 1980, defendants moved the district court for an order to vacate the injunction, pursuant to Fed.R.Civ.P. 60(b)(5) and (6), on the grounds that a change in law since the entry of judgment made prospective application of the injunction no longer equitable. The district court, the Honorable Donald D. Alsop presiding, held that defendants failed both to show a change in circumstances and to show how continued enforcement of the injunction would constitute a grievous wrong. The City appealed from this order.
 
 
 5
 Rule 60(b)(5).
 
 
 6
 Fed.R.Civ.P. 60(b)(5) provides that a court may relieve a party from an order if it finds that it is "no longer equitable that the judgment should have prospective application." A change in factual or legal circumstances may make continued enforcement inequitable. System Federation No. 91, Railway Employees' Dep't AFL-CIO v. Wright, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).
 
 
 7
 The district court held that the City must prove both change in the law and continued enforcement of the injunction would constitute a grievous wrong. The City agrees it has the burden to show change in the law. The City argues that where there is a material change in the law such that the constitutional basis for the injunction no longer exists, the injunction is then per se inequitable and there is no need to demonstrate grievous wrong. Because we have determined that the cases relied upon by the City have not worked a sufficient change in controlling law, we do not reach the question whether the City must also show that continued enforcement of the injunction would constitute a grievous wrong.
 
 
 8
 Merits.
 
 
 9
 The City contends that one question not explicitly answered in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) was whether a city could prohibit staff physicians from performing abortions for paying patients at the sole hospital in the community. In Nyberg I, this court determined that the city's attempt to do so was unconstitutional and should be enjoined. The City contends that in Nyberg I this court held:
 
 
 10
 1. That if a state may not prescribe abortion conduct by a criminal statute, it may not prevent such conduct in its facilities by civil regulation;
 
 
 11
 2. That a state must show "compelling state interest" before it may regulate in the abortion area; and
 
 
 12
 3. That since a state may not interfere in the abortion decision, it may not bar the use of its facilities to prevent effectuation of that decision.
 
 
 13
 The City asserts that recent developments in the constitutional aspects of abortion law demonstrate that the constitutional bases which this court assumed to exist in Nyberg I no longer exist. It urges Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); Poelker v. Doe, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977); Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); and Williams v. Zbaraz, 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980) represent a change in abortion law after Roe v. Wade and thus make the injunction no longer supportable. We must disagree. The decisions of the Supreme Court upon which the City relies do not provide a controlling change in the law.
 
 
 14
 In Maher, the Supreme Court held that even though the state was providing funding for childbirth, a state regulation denying funding for first trimester, nontherapeutic abortions was constitutional. In Harris, the Court upheld the constitutionality of the Hyde Amendment, which prohibited the use of federal funds to reimburse the cost of abortions except where the life of the mother would be in danger or where the rape or incest is reported promptly. In Williams, a state statute prohibiting the use of state funds for all abortions except for those "necessary for the preservation of the life of the woman seeking such treatment" was held constitutional.
 
 
 15
 In this trilogy of cases it was found that the constitutional freedom of a woman to decide whether to terminate her pregnancy recognized in Roe v. Wade did not prevent the state from making "a value judgment favoring childbirth over abortion, and ... implement(ing) that judgment by the allocation of public funds." Maher, 432 U.S. at 474, 97 S.Ct. at 2382; Harris, 448 U.S. at 314, 100 S.Ct. at 2687. These cases do not reach the issue in Nyberg I. Under the resolution, the City of Virginia and the Hospital Commission attempt to do more than simply deny governmental funding for abortions. If the resolution is effective, then no woman could obtain an abortion in the city hospital unless her life was endangered. Thus, the City attempts to eliminate access to abortion services at the sole hospital in the City of Virginia.
 
 
 16
 The City places primary reliance on Poelker v. Doe, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977). In that case, an indigent woman challenged a policy directive prohibiting abortions in city hospitals except in cases of threat of grave injury or death to the woman. The hospital where the woman sought to obtain a nontherapeutic abortion was one of two city-owned hospitals in St. Louis. The obstetrical-gynecological department of that hospital was staffed with doctors who were graduates of St. Louis University, a Jesuit school of medicine opposed to abortion. No member of that medical staff was willing to perform an abortion. In enjoining the policy of the hospital, this court cast the issue in an equal protection mold, finding that the provision of publicly financed hospital services for childbirth but not for elective abortions constituted invidious discrimination. In support of its equal protection analysis, this court also emphasized the contrast between nonindigent women who can afford to obtain abortions in private hospitals and indigent women who cannot. Doe v. Poelker, 515 F.2d 541 (8th Cir. 1975), rev'd, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977).
 
 
 17
 In reversing the decision, the Supreme Court found the constitutional question in Poelker identical with that presented by a state's refusal to provide Medicaid benefits for abortions while providing them for childbirth. 432 U.S. at 521, 97 S.Ct. at 2392. The Court stated that for the reasons set forth in Maher, St. Louis did not violate the Constitution by electing, as a policy choice, to provide publicly financed services for childbirth without providing corresponding services for nontherapeutic abortions. Id.
 
 
 18
 The City argues that the holdings in these cases make it clear that a state may decide to provide a certain health service-or not to provide such a service-and that providing of a particular service does not require the providing of another similar service. Maher v. Roe, 432 U.S. 464, 481, 97 S.Ct. 2376, 2386, 53 L.Ed.2d 484 (Burger, C.J., concurring). The City further argues that this court found the limited purpose of the Poelker opinion was to demonstrate that Maher's approval of withholding medicaid subsidies for nontherapeutic abortions also applies to a city's denial of hospital facilities. Reproductive Health Services v. Freeman, 614 F.2d 585, 597 n.22 (8th Cir.), vacated, 449 U.S. 809, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980). Thus, arguably, a city has the right to express a preference for normal childbirth by denying staff physicians the use of the sole hospital in the community to provide abortion services to their paying patients.
 
 
 19
 We find the City's argument unpersuasive. The analysis in Roe v. Wade and Doe v. Bolton is still controlling. Any governmental regulation interfering with the effectuation of a woman's decision whether to bear a child can be justified only by a "compelling state interest" and any regulation must be narrowly tailored to meet that interest. Roe v. Wade, 410 U.S. at 155, 93 S.Ct. at 728; Planned Parenthood Ass'n v. Ashcroft, 655 F.2d 848, 855 (8th Cir. 1981). Laws that limit access "to the means of effectuating" such decisions must be judged under strict scrutiny. Carey v. Population Services International, 431 U.S. 678, 688, 97 S.Ct. 2010, 2018, 52 L.Ed.2d 675 (1977). Yet, regulations that refuse governmental funding for abortions are not "government-created obstacles" that restrict access to abortions, and no compelling state interest need be shown. Maher, 432 U.S. at 474, 97 S.Ct. at 2382; Poelker, 432 U.S. at 521, 97 S.Ct. at 2392; Harris, 448 U.S. at 315, 100 S.Ct. at 2687; and Williams, 448 U.S. at 369, 100 S.Ct. at 2701. Indigency is not a government created obstacle.
 
 
 20
 The facts in this case differ significantly from those in Maher, Harris, Williams, and Poelker. The City of Virginia and the Hospital Commission are not required to provide free abortions, hire doctors who will do abortions, or subsidize the abortion services. The injunction requires the City simply to allow staff physicians at the community hospital to perform paid abortions at the hospital. There is no evidence that mere use of the Virginia Municipal Hospital by staff physicians to provide abortion services to their paying patients interferes with the normal hospital routine or causes the government to incur any expenditure of public funds. Obviously, in Maher, Harris, and Williams direct public expenditure was at issue.
 
 
 21
 In Poelker, the Supreme Court determined that a city hospital was not required to spend public funds to hire doctors who would perform abortions or otherwise provide publicly financed hospital services for indigent women.[1]
 
 
 22
 There is a fundamental difference between providing direct funding to effect the abortion decision and allowing staff physicians to perform abortions at an existing publicly owned hospital. While it is true public money may have been used to build the hospital, that capital expenditure was to provide facilities for a large number of operations, of which first trimester abortions was but one. The decision that a city must allow staff physicians to perform abortions at the sole community hospital is far removed from those decisions which do not require direct public expenditure to facilitate abortions.
 
 
 23
 Equal Protection.
 
 
 24
 Finally, we observe that in Maher, Poelker, Harris, and Williams a state regulation was challenged and denied on equal protection grounds. In each of these cases, however, the Court expressed its view that the regulation may have been unconstitutional if it restricted access to the abortion decision. In Nyberg, the City's resolution was not and is not now challenged on equal protection grounds. Under the resolution, both indigent and nonindigent women would be unable to obtain an abortion in Virginia. The challenge to the resolution rests on the fundamental proposition that the resolution constitutes an undue burden on access to abortions.
 
 
 25
 In Nyberg I, we found the resolution to be a substantial interference and burden on a woman's decision to have an abortion.[2] Nyberg I, 495 F.2d at 1345-46. Under the circumstances the City had the burden to justify the regulation by showing a compelling state interest. The City makes no attempt to show any state interest for the regulation. Thus, we continue to find that the regulation is not constitutional, however, more relevant to the issue here, we cannot find that recent constitutional decisions have fundamentally changed the law initially pronounced in Roe and Doe.
 
 
 26
 Conclusion.
 
 
 27
 A district court's ruling on a Rule 60(b)(5) motion will not be reversed on appeal unless it evidences an abuse of discretion. United States v. Homestake Mining Co., 595 F.2d 421, 426 (8th Cir. 1979). We find no abuse of discretion in this case. We conclude the City has not shown that there has been a change in the law so that it is no longer equitable that the injunction should have prospective application.[3] We therefore affirm the ruling of the district court.
 
 
 28
 Judgment affirmed.
 
 
 29
 HEANEY, Circuit Judge, dissenting.
 
 
 30
 I respectfully dissent. In my view, the majority opinion is inconsistent with the Supreme Court's decision in Poelker v. Doe, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977), and is not required by Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
 
 
 31
 The majority would distinguish Poelker v. Doe, supra, 432 U.S. at 519, 97 S.Ct. at 2392, on the grounds that, here, the government (the City of Virginia) does not "incur any expenditure of public funds," and that in Poelker, the City of St. Louis did incur such expenditures. At 758.
 
 
 32
 The argument fails for two important reasons:
 
 
 33
 (1) The record does not support the statement that the City of Virginia incurs no public expenditures when abortions are performed in the municipal hospital. It only supports the statement of Judge Stephenson in Nyberg v. City of Virginia, 495 F.2d 1342, 1345 (8th Cir. 1974) (Nyberg I ), that the City would not be required to establish new or different facilities and staff in order to perform the operations. If the decision is to turn on the issue of whether costs are incurred, the matter should be remanded to the district court for additional findings.
 
 
 34
 (2) This Court based its decision in Nyberg I on the premise that under Wade and Bolton, a public hospital with suitable facilities cannot bar physicians from using the facilities to perform all nontherapeutic abortions. A panel of this Court followed Nyberg I in Doe v. Poelker, 515 F.2d 541 (8th Cir. 1975). In Poelker, Judge Ross stated:
 
 
 35
 Stripped of all rhetoric, the city here, through its policy and staffing procedure, is simply telling indigent women, like Doe, that if they choose to carry their pregnancies to term, the city will provide physicians and medical facilities for full maternity care; but if they choose to exercise their constitutionally protected right to determine that they wish to terminate the pregnancy, the city will not provide physicians and facilities for the abortion procedure, even though it is probably safer than going through a full pregnancy and childbirth. Roe v. Wade, 410 U.S. 113, 163, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). No rational or legally cognizable basis for this distinction is offered. And it is certainly true that this distinctive treatment represents as much interference in the abortion decision of an indigent woman by the city as the prohibition of all nontherapeutic abortions in city-operated hospitals condemned by this Court in Nyberg v. City of Virginia, 495 F.2d 1342 (8th Cir.), appeal dismissed, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974)...
 
 
 36
 Id. at 544-545 (footnote omitted).
 
 
 37
 In setting forth a remedy, the Court stated:
 
 
 38
 We declare the city's policy prohibiting all nontherapeutic abortions in its publicly owned hospitals to be unconstitutional as an unwarranted infringement on pregnant women's right to privacy and as a denial of equal protection to indigent pregnant women. * * * We hold that both city owned hospital facilities must be made available for abortion services as they are for other medical procedures. Nyberg v. City of Virginia, supra, 495 F.2d at 1347.
 
 
 39
 Id. at 546 (citations omitted).
 
 
 40
 We remanded the matter to the district court to fashion prompt and appropriate declaratory relief. (Our order was subsequently stayed pending appeal to the United States Supreme Court.) The Supreme Court reversed this Court, and remanded the matter to us for further proceedings consistent with its opinion. Poelker v. Doe, supra, 432 U.S. at 521-522, 97 S.Ct. at 2393. We promptly vacated our opinion and affirmed the dismissal of the action by the District Court for the Eastern District of Missouri. Poelker v. Doe, 558 F.2d 1346 (8th Cir. 1977). Thus, as matters stand, it appears that notwithstanding the dicta in Planned Parenthood Association of Kansas City v. Ashcroft, 655 F.2d 848, 855 n.9 (8th Cir. 1981), the City of St. Louis can prohibit all nontherapeutic abortions, either paid or nonpaid, from being performed in its publicly owned hospital while the City of Virginia cannot. This is an intolerable situation.
 
 
 41
 One final point. The majority states that the municipal hospital is the sole hospital in the City of Virginia. At 757, 758 n.2. In doing so, it suggests that access to abortions may be curtailed or eliminated for those who live in Virginia and its environs. The record does not support this view. If reasonable access to abortions is to be a deciding factor in this and other similar cases, we should remand to the district court for further factfinding. If not, the fact that the municipal hospital is the only hospital in Virginia is irrelevant.
 
 
 
 *
 Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 We have recently observed that Poelker v. Doe did not hold that a state hospital may refuse to allow physicians to perform paid abortions in the hospital. Planned Parenthood Ass'n v. Ashcroft, 655 F.2d 848, 855 n.9 (8th Cir. 1981)
 
 
 [2]
 Because of the prohibition on the use of the sole facility in the city for abortions, a woman is required to travel to another community. In so doing, the government is forcing the woman to take additional risks. She may not be allowed to be treated by her private physician at another hospital located in a different community; the likelihood exists that the doctor will probably not have staff privileges
 The inability to rely on her own physician's services raises further complications. The woman's own physician would possess familiarity with the woman's background and needs; he would be in the best position to exercise the professional judgment necessary to determine whether abortion in a particular case would be advisable.
 
 
 [3]
 We find the decision of the New Jersey Supreme Court in Doe v. Bridgeton Hospital Ass'n, 71 N.J. 478, 366 A.2d 641 (1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977) significant. In that case, three New Jersey hospitals adopted resolutions similar to the resolution enacted by the City of Virginia. The New Jersey Supreme Court ruled that the hospitals were required to permit abortions to be performed at their facilities. The decision was appealed and the United States Supreme Court denied certiorari
 Portions of the New Jersey Supreme Court's discussion of the hospital's duty to the public are worthy of repetition and germane to the issue here:
 The hospital rule or regulation should be related to the hospital's purposes and operational needs.... Moral concepts cannot be the basis of a non-sectarian non-profit eleemosynary hospital's regulations where that hospital is holding out the use of its facilities to the general public. The board of trustees or directors, although vested with managerial discretion within the framework of the hospital's functions and purposes, may not promulgate unrelated policies. When it does so, its determinations are unsupportable and arbitrary.
 ....
 Medically there is no valid distinction which justifies permission to utilize hospital facilities and equipment for therapeutic, but not elective abortions.
 ....
 The defendants contend that the rules reflect the community's conscience and that to overrule that sentiment would cause the loss of substantial financial support. The contention rests on two assumptions-that a majority of the residents in the communities served by the three non-sectarian hospitals are opposed to permitting the facilities to be used for first trimester abortions and that these contrary-minded members of the citizenry will eliminate or reduce their financial support for the hospitals. The record does not establish the first premise. Even though the propriety of elective abortions provokes highly emotional responses, it is extremely doubtful that the public will not assist the hospitals whose services are so vital for the public health and welfare of the community. Furthermore the defendants' contention conflicts with and ignores the underlying principle of a non-sectarian hospital, whose basic purpose is to make available hospital facilities for the care and treatment of the public.
 ....
 The federal constitutional right to an abortion during the first trimester is now well-settled. Roe v. Wade, supra. For the state to frustrate that right by its action would be violative of the constitutional guarantee.