29 P.3d 281

**SIMAT CORP.** d/b/a Abortion Services of Phoenix; Arizona Reproductive Medicine & Gynecology, Ltd., Robert H. Tamis, M.D.; Family Planning Associates Medical Group; Joel B. Bettigole, M.D.; Damon S. Raphael, M.D.; Tucson Woman's Clinic; and William A. Meyer, Jr., M.D., Plaintiffs–Appellees,

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, and Phyllis Biedess, in her capacity as Director of AHCCCS, Defendants–Appellants.**

No. 1 CA–CV 00–0334.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 7, 2001.

Johnston & Kelly, P.L.C., by Logan T. Johnston, Phoenix, Attorneys for Defendants–Appellants.

LaVoy & Chernoff, PC, by Christopher LaVoy and Mark Chernoff, Phoenix, and Center for Reproductive Law & Policy by Bebe J. Anderson and Suzanne Novak, and Deborah Baumgarten, New York, NY, Attorneys for Plaintiffs–Appellees.

Mueller & Drury, P.C., by James P. Mueller, Scottsdale, and Paul Benjamin Linton, Northbrook, IL, and Center for Arizona Policy by Len L. Munsil, Scottsdale, Attorneys for Amici Curiae, Members of the Arizona Legislature.

## OPINION

THOMPSON, Judge

¶ 1 This appeal presents three issues of first impression in Arizona: (1) Whether the right to privacy under Article 2, § 8 of the Arizona Constitution requires the State of Arizona (the state) and the Arizona Health Care Cost Containment System (AHCCCS) to cover "medically necessary" abortions in spite of Arizona law that expressly prohibits the state from doing so; (2) whether the statutory scheme violates Article 2, § 13 of the Arizona Constitution (privileges and immunities); and (3) whether the statutory scheme violates Article 4, part 2, § 19(13) of the Arizona Constitution (prohibition against special laws). We hold that the Arizona statutes and regulations prohibiting the state from funding medically necessary abortions are constitutional and reverse the decision of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The facts are not in dispute. The appellees are doctors who provide abortion services. They each see a significant number of AHCCCS patients per year. All of the doctors have had patients with medical conditions which, together with pregnancy, threaten their health but not necessarily their lives. Such medical conditions include heart disease, diabetes, kidney disease, polyostosis, liver disease, chronic renal failure, asthma,

Marfan's syndrome, arthritis, inflammatory bowel disease, gall bladder disease, hypertension, uterine fibroid tumors, epilepsy, toxemia, and lupus. Neither AHCCCS nor federal Medicaid funds abortion services unless the mother's life is threatened or she is a victim of rape or incest. However, medically necessary abortions often must be performed at a hospital and can cost thousands of dollars. Women who receive AHCCCS benefits have incomes at or below 140% of the federal poverty level, and privately raising funds for an abortion can be a hardship for many of these women. The majority of AHCCCS-eligible women who seek to obtain non-covered, medically necessary abortions are ultimately able to do so, however.

¶ 3 The appellees filed a complaint in superior court requesting declaratory and injunctive relief, alleging that the Arizona law prohibiting AHCCCS coverage of "almost all" medically necessary abortions violates the Arizona Constitution. Specifically, the complaint alleged that Arizona's ban on funding medically necessary abortions for AHCCCS recipients violates Article 2, § 8 (right to privacy), Article 2, § 4 (due process), Article 2, § 13 (equal privileges and immunities), and Article 4, part 2, § 19(13) (prohibition against special laws). The state moved to dismiss the complaint for failure to state a claim. The appellees filed a motion for summary judgment, and the state filed a cross-motion for summary judgment. The trial court denied the state's motion to dismiss the complaint and cross-motion for summary judgment and granted the appellees' motion for summary judgment. It issued a permanent injunction prohibiting the enforcement of Arizona Revised Statutes Annotated (A.R.S.) § 35–196.02, and ordered the state to fund medically necessary abortions to the same extent that it funds other pregnancy-related services. The state filed a petition for special action. This court declined to accept special action jurisdiction. The state timely appealed. We have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1).

## DISCUSSION

¶ 4 This appeal requires us to determine whether A.R.S. § 35–196.02 violates the Arizona Constitution. The constitutionality of a statute involves a question of law, which we review de novo. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995). We will presume that a statute is constitutional. *Tucson Elec. Power Co. v. Apache County*, 185 Ariz. 5, 11, 912 P.2d 9, 15 (App. 1995).

¶ 5 Section 35–196.02, entitled "Use of public funds for abortion prohibited," provides:

> Notwithstanding any provisions of law to the contrary, no public funds nor tax monies of this state ... nor any federal funds passing through the state treasury or the treasury of any political subdivision of this state may be expended for payment to any person or entity for the performance of any abortion unless an abortion is necessary to save the life of the woman having the abortion.

Administrative regulations pertaining to AHCCCS and its scope of services likewise exclude abortions not authorized under federal or state law and abortion counseling from AHCCCS coverage. *See* Ariz. Admin. Code R9–22–205(B)(4), R9–22–215, R9–30–205, R9–30–215. AHCCCS does pay for abortions for rape and incest victims. *See* AHCCCS Medical Policy for Maternal and Child Health, Chapter 400, Policy 410.

### A.R.S. § 35–196.02 Does Not Violate Article 2, § 8 of the Arizona Constitution

¶ 6 The trial court found that A.R.S. § 35–196.02 and the AHCCCS regulations pertaining to abortions violate Article 2, § 8 of the Arizona Constitution. That constitutional provision states:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

Arizona courts have described the right to privacy provided for in the Arizona Constitution as the "right to be let alone." *See Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 302, 162 P.2d 133, 141 (1945).

¶ 7 In *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the United States Supreme Court concluded that "a right of personal privacy, or a guarantee

of certain areas or zones of privacy, does exist under [the Due Process Clause of the United States] Constitution" and that "[t]his right of privacy ... is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." In 1980, in *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784, the Supreme Court considered the constitutionality of the Hyde Amendment, which prohibits the use of federal funds to reimburse states for the cost of abortions under Medicaid except when the mother's life is in danger or she is a victim of rape or incest in light of a woman's constitutional right to an abortion. The Court concluded that the Hyde Amendment was constitutional, stating:

> [I]t simply does not follow that a woman's freedom of choice carries with it a constitutional entitlement to the financial resources to avail herself of the full range of protected choices. The reason why was explained in [*Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977)]: although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category. The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of governmental restrictions on access to abortions, but rather of her indigency. Although Congress has opted to subsidize medically necessary services generally, but not certain medically necessary abortions, the fact remains that the Hyde Amendment leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if Congress had chosen to subsidize no health care costs at all. We are thus not persuaded that the Hyde Amendment impinges on the constitutionally protected freedom of choice recognized in *Wade*.
>
> Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom. To hold otherwise would mark a drastic change in our understanding of the Constitution. It cannot be that because government may not prohibit the use of contraceptives, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, or prevent parents from sending their child to a private school, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, government, therefore, has an affirmative constitutional obligation to ensure that all persons have the financial resources to obtain contraceptives or send their children to private schools. To translate the limitation on governmental power implicit in the Due Process Clause into an affirmative funding obligation would require Congress to subsidize the medically necessary abortion of an indigent woman even if Congress had not enacted a Medicaid program to subsidize other medically necessary services. Nothing in the Due Process Clause supports such an extraordinary result. Whether freedom of choice that is constitutionally protected warrants federal subsidization is a question for Congress to answer, not a matter of constitutional entitlement. Accordingly, we conclude that the Hyde Amendment does not impinge on the due process liberty recognized in *Wade*.

448 U.S. at 316–18, 100 S.Ct. 2671 (footnotes omitted).

¶ 8 While "decisions of the United States Supreme Court have great weight in interpreting those provisions of the state constitution which correspond to the federal provisions," we do not blindly follow federal precedent. *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984). The appellees urge that we should not follow *Harris v. McRae* because "the Arizona Constitution provides independent, and often greater, protection of individual rights" and because the Arizona Constitution contains an explicit privacy provision while the federal constitution does not.

¶ 9 The appellees cite *State v. Bolt*, 142 Ariz. 260, 689 P.2d 519 (1984). In *Bolt*, the

Arizona Supreme Court considered Article 2, § 8 of the Arizona Constitution in the context of a warrantless entry of police into an Arizona citizen's home. *Id.* at 263, 689 P.2d at 522. Our supreme court concluded that a warrantless entry of a home in the absence of exigent circumstances violated the Arizona Constitution's guarantee of the right to privacy. *Id.* at 265, 689 P.2d at 524. Focusing on the specific language in Article 2, § 8, the court stated:

> While we are cognizant of the need for uniformity in interpretation, we are also aware of our people's fundamental belief in the sanctity and privacy of the home and the consequent prohibition against warrantless entry. We believe that it was these considerations that caused the framers of our constitution to settle upon the specific wording in Article 2, § 8.

*Id.* at 264, 689 P.2d at 523.

¶ 10 Nothing in Article 2, § 8 suggests that the framers of the Arizona Constitution intended the right to privacy under our constitution to create a right of Arizona citizens to subsidized abortions to which they are not entitled under the United States Constitution, even if Arizona citizens have a greater right to privacy under the Arizona Constitution.

¶ 11 The appellees cite a number of opinions from other jurisdictions in which state courts have found that their states' refusal to fund abortions for Medicaid-eligible women violated a state constitutional right to privacy. *See Comm. to Defend Reprod. Rights v. Myers,* 29 Cal.3d 252, 172 Cal.Rptr. 866, 625 P.2d 779 (1981); *Doe v. Maher,* 40 Conn. Supp. 394, 515 A.2d 134 (1986); *Moe v. Sec'y of Admin. & Fin.,* 382 Mass. 629, 417 N.E.2d 387 (1981); *Women of Minn. v. Gomez,* 542 N.W.2d 17 (Minn.1995). There is nothing in our state's jurisprudence that would suggest a similar result. Appellees cite no Arizona cases that hold that the right to privacy under the Arizona Constitution is broader in abortion matters than under the federal constitution. In Florida, where, unlike here, state supreme court precedent holds that Florida citizens' right to privacy is broader in abortion matters under the Florida Constitution, *see In re T.W.,* 551 So.2d 1186, 1192

(Fla.1989), it has nonetheless been held that the government's decision not to fund abortions does not impinge on the right to choose. The Florida Supreme Court stated:

> Although the Florida Legislature has opted to subsidize medically necessary services generally, but not certain medically necessary abortions, the fact remains that Florida's Medicaid program leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if the Legislature had chosen to subsidize no health care costs at all. The right of privacy in the Florida Constitution protects a woman's right to choose an abortion. But contrary to the petitioners' arguments, the right of privacy does not create an entitlement to the financial resources to avail herself of this choice. Poverty may make it difficult for some women to obtain abortions. Nevertheless, the State has imposed no restriction on access to abortions that was not already present. Therefore, we find that the rules in question do not violate the right of privacy in the Florida Constitution.

*Renee B. v. Fla. Agency for Health Care Admin.,* No. SC00–989, 2001 WL 776533, at *4 (Fla. July 12, 2001). Courts in Michigan, North Carolina, and Pennsylvania have reached a similar result. *See Doe v. Dep't of Soc. Services,* 439 Mich. 650, 487 N.W.2d 166 (1992); *Rosie J. v. N.C. Dep't of Human Res.,* 347 N.C. 247, 491 S.E.2d 535 (1997); *Fischer v. Dep't of Pub. Welfare,* 509 Pa. 293, 502 A.2d 114 (1985).

¶ 12 The trial court relied on *Rasmussen v. Fleming,* 154 Ariz. 207, 741 P.2d 674 (1987). In *Rasmussen,* our supreme court held that the right to refuse medical treatment is a state constitutional right under Article 2, § 8. *Id.* at 215, 741 P.2d at 682. The *Rasmussen* court stated that "[a]n individual's right to chart his or her own plan of medical treatment deserves as much, if not more, constitutionally-protected privacy than does an individual's home or automobile." *Id.* Appellees argue that the statutory scheme violates an AHCCCS patient's right to chart her medical treatment. They argue that once government undertakes to provide medical care to

the indigent it cannot restrict the care. However, even if an AHCCCS patient has a right to direct her medical care under the Arizona Constitution, it does not follow that the patient has a constitutional right to receive financial assistance to obtain all potential treatments. The patient is free to elect to undergo an abortion and is not penalized by the statute for doing so. Government is not interfering with a woman's right to direct her medical care in this instance. Instead, any impairment comes from the woman's inability to pay for an abortion. *See Maher,* 432 U.S. at 474, 97 S.Ct. 2376 ("The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there. The indigency that may make it difficult—and in some cases, perhaps, impossible for some women to have abortions is neither created nor in any way affected by the Connecticut regulation (limiting state Medicaid benefits for abortions to those that are 'medically necessary')").

¶ 13 Because we disagree with the trial court's conclusion that A.R.S. § 35–196.02 violates Article 2, § 8 of the Arizona Constitution, we now address the appellees' remaining constitutional claims.

**A.R.S. § 35–196.02 Does Not Violate the Privileges and Immunities Clause of the Arizona Constitution**

¶ 14 Article 2, § 13 of the Arizona Constitution provides:

> No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.

Arizona courts equate Article 2, § 13 with the Equal Protection Clause of the Fourteenth Amendment. *See Phoenix Newspapers, Inc. v. Purcell,* 187 Ariz. 74, 77, 927 P.2d 340, 343 (App.1996).

¶ 15 The appellees argue that A.R.S. § 35–196.02 creates three impermissible governmental classifications. First, they argue, it creates an impermissible classification be-tween low-income women who do not wish to have an abortion and low-income women who do wish to have an abortion. Second, they argue that the statutory scheme creates an impermissible classification between low-income men who seek medically necessary health care and low-income women who seek medically necessary health care through AHCCCS. Finally, they argue that the statutory scheme creates an impermissible classification between life-saving and health-preserving abortions.

¶ 16 In *Harris v. McRae,* 448 U.S. at 322, 100 S.Ct. 2671, the Supreme Court also considered whether "the fact that ... although federal reimbursement is available under Medicaid for medically necessary services generally, the Hyde Amendment does not permit federal reimbursement of all medically necessary abortions" violates the guarantee of equal protection under the Fifth Amendment of the United States Constitution. It concluded that it did not, finding that the Hyde Amendment was not predicated on a constitutionally suspect classification and that there was a rational basis for the law. *Id.*

¶ 17 In *Williams v. Zbaraz,* 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980), a case the Supreme Court decided on the same day as *Harris v. McRae,* the Court considered whether an Illinois statute prohibiting state medical assistance payments for all abortions except those necessary to save the life of the woman seeking the abortion violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Citing *Harris v. McRae,* the Court found that the funding restrictions in the Illinois statute did not violate equal protection. *Williams,* 448 U.S. at 369, 100 S.Ct. 2694.

¶ 18 Like the United States Supreme Court, we conclude that Arizona's statutory scheme is not predicated on a constitutionally suspect classification. The Arizona law does not discriminate on the basis of sex. Nor does the classification impinge upon the exercise of a fundamental right. *See Maher v. Roe,* 432 U.S. at 474, 97 S.Ct. 2376. Moreover, the statutory scheme is rationally related to a legitimate government

**512**

purpose, because the state has a legitimate interest in protecting unborn life and in promoting childbirth. *See Doe v. Dep't of Soc. Services,* 487 N.W.2d at 178–79.

### A.R.S. § 35–196.02 Does Not Violate the Arizona Constitution's Prohibition of Special Laws

 ¶ 19 Finally, the appellees argue that the statutory scheme violates Article 4, Part 2, § 19 of the Arizona Constitution, which prohibits the enactment of "local or special laws ... [g]ranting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises." They argue that the AHCCCS program violates the prohibition of special laws by "providing all necessary health services to eligible individuals who have health conditions that can be remedied or relieved by a service other than termination of pregnancy while denying health services to eligible individuals who have health conditions that can only be remedied or relieved by termination of pregnancy." We disagree. The services that AHCCCS does provide to Medicaid-eligible individuals are not special or exclusive simply because AHCCCS does not provide medically necessary abortions.

### CONCLUSION

¶ 20 The trial court erred in holding that A.R.S. § 35–196.02 and the corresponding regulations violate the right of privacy under the Arizona Constitution. Moreover, Arizona's statutory scheme does not violate Article 2, § 13 or Article 4, Part 2, § 19 of the Arizona Constitution. Accordingly, we reverse the decision of the trial court and remand for entry of summary judgment in favor of the state. The permanent injunction against the enforcement of A.R.S. § 35–196.02 is lifted. The appellees' request for costs and attorneys' fees is denied.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, EDWARD C. VOSS, Judge.