**STATE OF GEORGIA, by its DEPARTMENT OF MEDICAL ASSISTANCE, Plaintiff,**

v.

**Margaret HECKLER, et al., Defendants.**

**Civ. A. No. C83–594A.**

United States District Court, N.D. Georgia, Atlanta Division.

April 6, 1984.

Michael J. Bowers, Atty. Gen., Mark H. Cohen, Vivian Davidson Egan, Atlanta, Ga., for plaintiff.

Elizabeth A. Pugh, Civil Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

SHOOB, District Judge.

This is an action for judicial review of a decision by the Secretary of Health and Human Services (HHS) to disallow claims by the State of Georgia for reimbursement ("federal financial participation" or "FFP") by the federal government of Medicaid payments. The parties have filed cross-motions for summary judgment; they agree that there is no dispute of material facts and that the case may be decided as a matter of law.

*Factual Background*

The following facts are not in dispute.

1.

Since September 30, 1976, the United States Congress has prohibited the use of any federal funds to reimburse the cost of certain abortions under the Medicaid program. This funding restriction has commonly been known as the "Hyde Amendment". Following this Congressional initiative, the Georgia Department of Medical Assistance promulgated rules whereby Medicaid reimbursement for abortions was available only if one of several conditions was met. The conditions established by the State agency tracked the language of the federal Hyde Amendment.

2.

On May 8, 1979, various plaintiffs, including several Medicaid providers, filed a class action lawsuit in the United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action No. C79–786A. These plaintiffs claimed that the rule promulgated by the State Department of Medical Assistance denied them and the indigent women patients needing medically necessary abortion services their rights under the Social Security Act and the United States Constitution. Plaintiffs sought declaratory and injunctive relief on behalf of a physician class and a patient class.

3.

On June 4, 1979, the trial court entered a preliminary injunction which enjoined the State of Georgia, through its Department of Medical Assistance, from refusing to provide Medicaid payments for all medically necessary abortions, even though federal funding of such abortions was precluded by the Hyde Amendment. *See Doe v. Busbee*, 471 F.Supp. 1326 (N.D.Ga.1979). The trial court reasoned that the Hyde Amendment did not operate to impose a limitation on Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, which, in the Court's view, obligated states to fund all medically necessary abortions. The court did not declare the Hyde Amendment unconstitutional or strike down the HHS regulations implementing that Amendment.

4.

Shortly after the issuance of the June 4, 1979 injunction, the Georgia Department of Medical Assistance moved for an order joining the United States Department of Health, Education and Welfare (now HHS) and its Secretary as defendants in the class action based, in part, on the State Agency's risk of incurring inconsistent obligations. The motion for joinder of the federal agency under Rule 19(a), Fed.R.Civ.P., was de-

nied by order of the trial court dated September 20, 1979.

5.

On December 7, 1979, the trial court granted the plaintiffs' motion for summary judgment, and permanently enjoined the Georgia Department of Medical Assistance from restricting Medicaid payment for medically necessary abortions insofar as such restrictions were inconsistent with Title XIX of the Social Security Act, notwithstanding the restrictions present in the Hyde Amendment. *See Doe v. Busbee*, 481 F.Supp. 46 (N.D.Ga.1979).

6.

On January 11, 1980, the Georgia Department of Medical Assistance filed an appeal of the trial court's December 7, 1979, order to the United States Court of Appeals for the Fifth Circuit. On June 30, 1980, the United States Supreme Court in *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), and *Williams v. Zbaraz*, 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980), held that a state which participates in the Medicaid program is not obligated under Title XIX of the Social Security Act to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment.

7.

In light of the Supreme Court's decision in *Harris* and *Zbaraz*, the trial court, on October 7, 1980, issued an order indicating that the state defendants would be entitled to Rule 60(b), Fed.R.Civ.P., relief should the Fifth Circuit Court of Appeals remand the case to the trial court. On December 19, 1980, the Fifth Circuit granted the State of Georgia's motion to remand the case to the District Court for reconsideration in light of the aforementioned United States Supreme Court decisions. On January 13, 1981, the trial court vacated its December 7, 1979, order and dismissed the class action complaint, in light of the *Harris* and *Zbaraz* decisions.

8.

The State of Georgia paid $167,392 to compensate medical providers for medically necessary abortions performed outside of both State restrictions and the Hyde Amendment limitations in compliance with the federal court orders in *Doe v. Busbee*.

9.

The Secretary's predecessor in office approved Georgia's state plan for medical assistance, and all amendments to it, concerning the compensation of health care providers performing abortion services for eligible recipients. Despite the Secretary's approval of Georgia's state plan, the Secretary refused to provide federal financial participation (FFP) in expenditures which the State of Georgia incurred as medical assistance if these expenditures were related to the reimbursement of the costs of providing abortion services to eligible Medicaid recipients, and if the services were not mentioned in the so-called "Hyde Amendment" or its various successors to federal Medicaid appropriations legislation.

10.

The Secretary's refusal to provide FFP resulted in Georgia's having to bear the entire financial burden of complying with the various orders which the trial court entered in the *Doe v. Busbee* case. The Secretary's decision to refuse FFP to Georgia for Medicaid abortion services provided in excess of the restrictions of the Hyde Amendment was implemented through the so-called "disallowance" procedure. 42 U.S.C. § 1316(d); 45 C.F.R. §§ 201.10–201.-14. By letter dated September 29, 1982, the Health Care Financing Administration of HHS disallowed $167,392 in FFP for Medicaid-funded abortions performed during the period from December 7, 1979, to February 18, 1980, and September 30, 1980, to March 31, 1982, that did not meet the criteria for federal funding contained in the Hyde Amendment.

11.

The Georgia Department of Medical Assistance requested reconsideration of the disallowance issued by HCFA from the De-

# 1380

partmental Grant Appeals Board, pursuant to 45 C.F.R. Part 16. HHS's Departmental Grant Appeals Board upheld the disallowance by HCFA based upon its finding that the $167,392 represented payments to health care providers participating in the Medicaid program for performing certain abortions which did not meet the requirements of the "Hyde Amendment". The State of Georgia now seeks judicial review in this Court.

## Discussion

■ The sole legal question in this case is who must bear the cost of Medicaid payments that a federal district court, construing federal law, forced the State of Georgia to make during a short-lived injunction that was vacated when the Supreme Court issued a ruling contrary to the district court's decision. The State of Georgia claims that the Department of Health and Human Services is obliged to reimburse the State, in keeping with normal federal financial participation in state Medicaid programs, for payments required by the injunction. On the other hand, the Department contends that the Hyde Amendment absolutely prohibits federal reimbursement of those payments and that, furthermore, the injunction in *Doe v. Busbee* applied only to the State and not to the Department.

In claiming that the Department must reimburse the State for its Medicaid payments required in *Doe v. Busbee*, the State relies upon a federal regulation authorizing federal reimbursement for state payments under court order. The regulation, 45 C.F.R. § 205.10(b)(3) (1978),[1] stated that:

> Federal financial participation is available for the following items:
>
> .    .    .    .    .
>
> (3) Payments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order.

The Department denies a duty to provide FFP under this regulation, first, because the payments were not "within the scope of Federally aided public assistance programs," and, second, because the regulation is itself limited by the Hyde Amendment which prohibits any federal expenditures for the abortions involved here.

The Court determines that the payments were "within the scope of Federally aided public assistance programs" made in accordance with a court order.[2] The Court in *Doe v. Busbee* compelled the State to make the payments on the grounds that Title XIX of the Social Security Act required them. Even though the ruling was later vacated and the reasoning abrogated, the basis of the injunction was that the Medicaid law required the payments. For that reason, the State of Georgia is entitled to FFP from the Department under the regulation.

---

1. The regulation was recodified in 1980, and is now found at 45 C.F.R. § 205.10(b)(3) (1983).

2. The Department claims that the payments at issue in this case were not "within the scope of Federally aided public assistance programs" because Georgia's payments for abortions did not meet the certification and documentation requirements of the regulations implementing the Hyde Amendment, or the requirements of the statute itself. The Court does not read the regulation so restrictively. "Within the scope of" is broader than "conforming to every certification and documentation requirement," and, in context, includes payments by states under their *Medicaid programs in general.*

The Court notes that an explanation of the regulation at 45 Fed.Reg. 24878 (April 11, 1980) appears to exclude the availability of FFP in the circumstances of this case. That explanation states: "even when there is a court order against a State to provide services beyond the limits of the program, FFP is not available when there are other regulatory provisions which impose limitations (such as separate time limits or limitations on types of services) upon the receipt of Federal funds."

The Court finds that explanation, revealed after the issues of this case arose, to be a *post hoc* rationalization with no bearing upon this case. The Court finds the context of the regulation as originally promulgated, *see* 35 Fed.Reg. 8448 (May 29, 1970) (proposed rule making); 36 Fed. Reg. 3034 (February 13, 1971) (adoption of rule), instructive in reaching its interpretation of the regulation, that the states are to receive FFP in circumstances where they are forced to pay benefits over the objection of the federal government so long as the payments are within the general scheme of the assistance programs.

■ The Hyde Amendment does not restrict the application of this regulation. It is clear that the regulation was designed to reimburse states for payments required under court order where statutory or regulatory authority was either absent or unclear. Any other construction of the regulation would make it superfluous.[3] The regulation appears ideally suited for the case at bar, in order to protect the states which, as dispensers of the benefits, might be ordered to dispense them when the federal authority was dubious. In *Doe v. Busbee* and in similar cases involving other states, the effect and even the constitutionality of the Hyde Amendment were seriously disputed, and the regulation served as a protection for states where they were told in effect by courts to do one thing and by the Department to do another.

■ Nor did the Hyde Amendment annul the regulation. The regulation created an enduring exception to other laws, whether existing or future, that might either restrict or fail to authorize payment. Therefore the Hyde Amendment, instead of limiting the regulation, is itself restricted by the regulation and does not bar payment in this case. If the Court in *Doe v. Busbee* relied upon a view of the law that was later rejected and deemed erroneous, that does not relieve the federal government of the responsibility for contributing to State payments erroneously enforced by a court construing federal law.

Although the Court in *Doe v. Busbee* acknowledged that the State might be solely responsible for the payments enforced in the case, *see* 471 F.Supp. at 1333 ("it is not the case, nor is it required by Title XIX, that there be federal financial participation in every service necessarily provided by a participating state"), that does not determine whether the Department is liable to the State for reimbursement. The Supreme Court's opinion in *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), made it clear that State payments and federal reimbursements were in lockstep as far as Title XIX of the Social Security Act was concerned. The Court said:

> The Medicaid program created by Title XIX is a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons. Under this system of "cooperative federalism," if a State agrees to establish a Medicaid plan that satisfies the requirements of Title XIX, which includes several mandatory categories of health services, the Federal Government agrees to pay a specified percentage of "the total amount expended ... as medical assistance under the State plan ..." 42 U.S.C. § 1396b(a)(1). The cornerstone of Medicaid is financial contribution by both the Federal Government and the participating State. Nothing in Title XIX as originally enacted, or in its legislative history, suggests that Congress intended to require a participating State to assume the full costs of providing any health services in its Medicaid plan. Quite the contrary, the purpose of Congress in enacting Title XIX was to provide federal financial assistance for all legitimate state expenditures under an approved Medicaid plan.

448 U.S. at 308, 100 S.Ct. at 2683–2684 (citations omitted; ellipsis in original).

Drawing from the last sentence of the language quoted above, the Court finds that payment by the State of Georgia, pursuant to the injunction of a federal court construing federal statutes, was a "legitimate state expenditure[ ] under an approved Medicaid plan" for which the federal financial participation is required.

---

**3.** The Department states that the regulation "simply establishes a general agency policy to participate in payments, *otherwise proper,* states make pursuant to court order." Defendants' memorandum at 19 (emphasis added). If the regulation merely authorized payments that were already authorized under program rules, then there would be no need for the regulation. In order for the regulation to have application, the Court reads it as providing federal participation in payments, *otherwise improper* under program rules, that states are forced to make by courts.

Accordingly, this Court holds that the decision of the Secretary to disallow FFP for Medicaid payments by the State of Georgia as ordered in *Doe v. Busbee* was unlawful and must be reversed. The Court therefore GRANTS plaintiff's motion for summary judgment, DENIES defendants' motion for summary judgment; the Court REVERSES the decision of the Secretary of Health and Human Services, and RE-MANDS the case to her for action consistent with this opinion.