STATE OF GEORGIA, by its DEPART-
MENT OF MEDICAL ASSISTANCE,
Plaintiff-Appellee,

v.

Margaret M. HECKLER, Secretary, De-
partment of Health and Human
Services, et al., Defendants-Appellants.

No. 84–8472.

United States Court of Appeals,
Eleventh Circuit.

Aug. 16, 1985.

Robert S. Greenspan, Marc Johnston, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Vivian Davidson Egan, Atlanta, Ga., for plaintiff-appellee.

.Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

This dispute is a product of the litigation concerning the congressional funding restrictions collectively known as the Hyde Amendment, which directed that no federal funds appropriated to pay the federal share of the Medicaid program were to be used to finance certain abortions.[1] Until the United States Supreme Court finally decided that this prohibition against use of federal funds was constitutional and that it relieved the states of any obligation to fund such abortions, the state agency in Georgia was under a federal court injunction to pay for these abortions. It sought reimbursement of $167,392, the amount that would have been paid in federal financial participation by the federal government, had it not been for the Hyde Amendment. The United States Department of Health and Human Services (HHS) disallowed the claim. The district court granted summary judgment for the State of Georgia reversing the disallowance. Because neither the law nor the injunction ordering the State to finance the abortions provides a basis for now compelling the federal government to contribute the federal share in contravention of the Hyde Amendment, we reverse.

After passage of the Hyde Amendment, in a suit brought against the State by persons eligible for medical assistance under Georgia's medicaid program, the United States District Court for the Northern District of Georgia enjoined the State of Georgia from refusing to fund medically necessary abortions through its Medicaid program, first in an order granting preliminary injunctive relief to two individual plaintiffs, *Doe v. Busbee*, 471 F.Supp. 1326 (N.D.Ga.1979), and later in a final order permanently enjoining the State. *Doe v. Busbee*, 481 F.Supp. 46 (N.D.Ga.1979). The district court, declining to address the issue of the Hyde Amendment's constitutionality, 481 F.Supp. at 48 n. 3, held that Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 *et seq.*, required the State of Georgia to fund medically necessary abortions through its Medicaid program even absent federal financial participation. 481 F.Supp. at 50; *see* 471 F.Supp. at 1331–34. The federal Department of Health and Human Services was not a party to that lawsuit.[2]

Meanwhile, on February 18, 1980, a federal district court in New York held the

---

1. Beginning in 1976, Congress has continuously prohibited the use of any federal funds to reimburse the cost of abortions under the Medicaid program except under certain specified circumstances. The restrictions have taken the forms of riders to the annual appropriations bill for HHS or joint resolutions. *See* Pub.L. No. 94–439, § 209, 90 Stat. 1434 (1976); Pub.L. No. 95–205, § 101, 91 Stat. 1460 (1977); Pub.L. No. 95–480, § 210, 92 Stat. 1586 (1978); Pub.L. No. 96–86, § 118, 93 Stat. 662 (1979); Pub.L. No. 96–123, § 109, 93 Stat. 926 (1979); Pub.L. No. 96–369, § 110, 94 Stat. 1356 (1980); Pub.L. No. 96–536, § 109, 94 Stat. 3170 (1981); Pub.L. No. 97–12, § 402, 95 Stat. 95 (1981); Pub.L. No. 97–377, § 204, 96 Stat. 1894 (1982); Pub.L. No.

98–139, § 204, 97 Stat. 887 (1983); Pub.L. No. 98–619, § 204, 98 Stat. 3321 (1984). Although these funding restrictions have contained different exceptions over the years, these variations are of no consequence in this case since the parties agree that the disallowed claims at issue are based upon abortions which fell outside the limited exceptions.

2. The State moved to join as parties the U.S. Department of Health, Education and Welfare and its Secretary, Joseph A. Califano (predecessors of the current federal litigants), but on September 20, 1979, the district court denied the motion.

Hyde Amendment unconstitutional, enjoined HHS on a national basis from giving effect to the Hyde Amendment, and required HHS to provide federal funds for medically necessary abortions. *McRae v. Califano,* 491 F.Supp. 630 (E.D.N.Y.1980). This order was appealed directly to the Supreme Court in expedited fashion. On June 30, 1980, the Supreme Court held that (1) the Hyde Amendment was constitutional and (2) the states participating in Medicaid programs are not required by Title XIX of the Social Security Act to fund abortions which are ineligible for federal funds under the Hyde Amendment. *Harris v. McRae,* 448 U.S. 297, 311, 326, 100 S.Ct. 2671, 2685, 2693, 65 L.Ed.2d 784 (1980). *See also Williams v. Zbaraz,* 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980).

In the meantime, Georgia had appealed the district court's injunction in *Doe v. Busbee* to the Fifth Circuit.[3] Shortly after the Supreme Court's decision in *Harris v. McRae,* the district court entered an order indicating the State was entitled to be released from the injunction to pay for these abortions. The Fifth Circuit remanded the case, and on January 13, 1981, the district court entered an order vacating the injunction and dismissing the class action complaint.

During the time the *Doe v. Busbee* injunction was in effect, the State was compelled to pay the claims of medical service providers who performed medically neces-

sary abortions.[4] The State sought the federal financial share of the subsidized abortions. HHS disallowed the claim on the grounds that the reimbursement sought represented payments for abortions which did not meet the requirements set forth by the Hyde Amendment.[5]

Initially, the State sought direct judicial review of the HHS decision in the Eleventh Circuit. In *Georgia Department of Medical Assistance v. United States Department of Health and Human Services,* 708 F.2d 627 (11th Cir.1983), the court held it lacked jurisdiction to review the HHS decision. The State filed the current case in district court, which granted summary judgment for the State, relying chiefly on an HHS regulation which provides that federal funds are available for "payments of assistance within the scope of federally aided public assistance programs made in accordance with a court order." 45 C.F.R. § 205.10(b)(3). *State of Georgia v. Heckler,* 583 F.Supp. 1377 (N.D.Ga.1984). HHS appealed, asserting that no federal funds were appropriated for this purpose and the prior district court injunction against the State did not affect the law prohibiting federal reimbursement for the abortion services.

■ HHS claims that regardless of any substantive merit to the State's claim for federal funds, Congress, through the Hyde Amendment, has refused to appropriate money to pay for medically necessary abor-

---

3. Prior to October 1, 1981, the date when the Eleventh Circuit was formed upon the division of the Fifth Circuit, appeals from the United States District Courts in Georgia were taken to the Fifth Circuit.

4. The State provided funds for abortions performed during a period immediately after the *Doe v. Busbee* injunction was lifted in January 1981. In February 1981, the State mailed notices of a decrease in services to Medicaid recipients as required by federal law. The notices had an effective date of March 15, 1981. The last quarterly expenditure report to HHS from which a disallowance was made was dated March 31, 1982. The record contains affidavits from State administrators indicating that no funds were paid to health care providers for medically necessary abortions performed after March 15, 1981, and that delay in filing and

processing of claims accounts for the year lapse between the latest abortions performed and the last claim presented by the State to HHS.

5. HHS did not contest claims for medically necessary abortions performed between the entry of the nationwide injunction on February 18, 1980 against HHS in *McRae v. Califano,* 491 F.Supp. 630 (E.D.N.Y.1980), until the Supreme Court's denial in September 1980 of the petitions for rehearing and issuance of mandate in *Harris v. McRae,* 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). Thus, the State's claim is for funds expended between December 7, 1979 and February 18, 1980 and between September 30, 1980 through March 31, 1982, the latter date being the date of the last quarterly expenditure report of the State submitted to HHS on which a disallowance occurred.

tions, thereby precluding HHS from paying the disallowed claims. Citing U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law"), the Antideficiency Act, 31 U.S.C.A. §§ 1341, 1350, and two rulings of the Comptroller General, HHS contends the State's claim may not be paid because Congress has refused to appropriate money for such payment. The underlying suggestion of this argument is that even if a federal court should decide the HHS was wrong under the law in disallowing the claims, HHS would be unable to fund those claims.

This argument begs the question. The Hyde Amendment bars HHS from paying claims such as the one before us only if a court interpreting and following relevant congressional enactments and Supreme Court decisions so holds. The lack of merit to this argument is seen by noting that HHS funded the federal share of medically necessary abortions during the period that it was under an injunction to do so in *McRae v. Califano*. When the Supreme Court reversed that injunction, it gave no indication that the district court's order was invalid because of limits imposed on HHS by the Constitution's appropriations clause, U.S. Const. art. I, § 9, cl. 7. HHS' own regulations require payments "in accordance with a court order." 45 C.F.R. § 205.10(b). There is no doubt that if this Court decided that these payments were legally required, HHS would be authorized to make them.

The question thus becomes whether HHS must provide federal financial participation to satisfy an obligation created by the interaction of the Medicaid funding scheme under Title XIX, the congressional appropriations restrictions set by the Hyde Amendment, and the federal district court injunction imposed on the State in *Doe v. Busbee*. The key to the decision is the effect of the district court injunction.

In lawsuits filed throughout the country during the late 1970's, the Hyde Amendment came under attack on both constitutional and statutory grounds. Courts confronted by these cases ruled in one of three different ways: first, that the states had to fund the abortions even absent federal financial participation; second, that the states had to fund the abortions and the federal government had to provide the federal share; and third, that neither the states nor the federal government had to fund the abortions. The district court in ordering the State to fund these services followed the first of these three courses, holding the State responsible for payments even if federal funding was not available. It refused to make HHS a party to that litigation, or to address the legal effect of the Hyde Amendment on federal action.

Analyzing the minimum requirements of Title XIX for a state Medicaid plan, *see* 42 U.S.C.A. §§ 1396a(a)(13)(B) and 1396d(a)(1)–(5), the *Doe v. Busbee* court concluded that "[i]t is clear that an abortion is a medical procedure which falls within the five general categories set out in Title XIX." 471 F.Supp. at 1330–31. The court then examined the Hyde Amendment and decided that it operated merely to restrict the use of federal funds for abortions, and that it did not substantively limit Title XIX. *Id.* at 1334. Consequently, it held that Title XIX still required the State of Georgia to fund medically necessary abortions without federal funds. That the district court was holding the State responsible even if federal financing was not available is clearly shown in the language of its order refusing to make the federal agencies party to the litigation.

> It is only necessary for this Court to address the question of whether the State of Georgia's Plan for Medical Assistance satisfies the mandates of Title XIX with respect to medically necessary abortions. Therefore, the federal parties which defendants seek to join have no interest in this case.

A year later, of course, the Supreme Court addressed the same issue, examined Title XIX and its legislative history, and concluded there was no suggestion that Congress intended the states to fund any medical services without federal assistance.

*Harris v. McRae,* 448 U.S. at 308, 100 S.Ct. at 2683. The Court held that "Title XIX does not require a participating State to include in its [Medicaid] plan any services for which ... Congress has withheld federal funding." 448 U.S. at 309, 100 S.Ct. at 2684. The district court in *Doe v. Busbee* thus relied on a wrong interpretation of the law in ordering the State to assume obligations not mandated by the Medicaid program. Since the decision was based on a rationale that the State was liable, regardless of federal financing, however, it affords no basis for holding HHS responsible for the services there ordered.

■ With limited exceptions, the Hyde Amendment prohibits the use of any federal funds to reimburse the cost of abortions through the Medicaid program. The *Doe v. Busbee* court did not decide to the contrary. Without a prior judicial decision that it was entitled to federal funding, the State's claim must fail. It made payment it should not have had to make in light of the Supreme Court decision that even if Title XIX would otherwise require the participating states to include medically necessary abortions in their Medicaid plans, "the withdrawal of federal funding under the Hyde Amendment would operate to relieve the State of that obligation for those abortions for which federal reimbursement is unavailable." *Harris v. McRae,* 448 U.S. at 310, 100 S.Ct. at 2684; *see also Williams v. Zbaraz,* 448 U.S. 358, 368–69, 100 S.Ct. 2694, 2700–01, 65 L.Ed.2d 831 (1980).

The State is in no different position than HHS was while it was under a direct court injunction to make payments it should not have been required to make. *See McRae v. Califano,* 491 F.Supp. 630 (E.D.N.Y.1980). Just as the federal government could not collect from the states the payments made to the states under that later reversed injunction, the State here cannot impose those payments on HHS, which was not even a party to the *Doe v. Busbee* litigation.

Three other courts have faced the issue raised in this case. Two have already ruled in favor of HHS. *State of Illinois v. U.S.*

*Dep't of Health and Human Services,* 594 F.Supp. 147, 154 (N.D.Ill.1984), *aff'd,* 772 F.2d 329 (7th Cir. 1985); *Women's Health Services, Inc. v. Maher,* 514 F.Supp. 265 (D.Conn.1981). The third case is pending on cross-motions for summary judgment, but a magistrate's report has been filed recommending the granting of HHS' motion and the denial of the state's motion. *Commonwealth of Massachusetts v. Heckler,* No. 82–1197–N (D.Mass. Feb. 2$ 1985) (magistrate's report and recommendations). The state has filed exceptions to the magistrate's report, necessitating *de novo* review by the district court.

As in the Massachusetts and Connecticut cases, HHS was not here a party to the lawsuit compelling the State to reimburse the medical service providers. As in the Illinois litigation, HHS was not subject to the federal court injunction. The orders entered by the district court had no effect against the federal parties in the litigation. *See State of Illinois v. U.S. Department of HHS,* 594 F.Supp. at 154 (citing *Williams v. Zbaraz,* 448 U.S. at 366, 100 S.Ct. at 2699 ("The District Court did not ... enjoin any action by the United States.")).

■ The State contends, however, that an HHS regulation entitles it to payment of federal funds. The pertinent portion of that regulation provides:

> (b) Federal financial participation is available for the following items:
>
> . . . . .
>
> (3) payment of assistance within the scope of federally aided public assistance programs made in accordance with a court order.

45 C.F.R. § 205.10(b)(3). The district court held that this regulation

> created an enduring exception to other laws, whether existing or future, that might either restrict or fail to authorize payment. Therefore, the Hyde Amendment, instead of limiting the regulation,

is itself restricted by the regulation and does not bar payment in this case.

583 F.Supp. at 1381.

The district court's application of the regulation fails to withstand analysis. First, 45 C.F.R. § 205.10, read as a whole, is intended to sanction the payment of federal funds where a state has made payments "within the scope of Federally aided public assistance programs" upon court order after judicial review of agency decisions made after hearings. *See id.* § 205.10(a). In 1970, when the current version of section 205.10 was proposed, a stated purpose of the regulation was that it provide "[an] opportunity for fair hearing, with continuation of assistance in cases involving individual issues of facts or judgment regarding termination or reduction of assistance." 35 Fed.Reg. 8448 (May 29, 1970). In 1980, HHS promulgated a parallel regulation, 42 C.F.R. § 431.250, with nearly identical wording, that was to apply solely to Medicaid. The accompanying explanation noted that the regulation "concerns [federal funds] for expenditures in services for individuals who are successful in their appeal" from a denial of benefits. 45 Fed.Reg. 24878 (April 11, 1980). The explanation further stated that "even where there is a court order against a State to provide services beyond the limits of the program, [federal funds are] not available when there are other regulatory provisions which impose limitations (such as separate time limits or limitations on types of services) upon the receipt of Federal funds." *Id.* Clearly, then, the regulation provides for federal funds to be furnished where a court has ordered a state to provide Medicaid benefits that would have been eligible for federal funds had the state, in implementing its federally approved program, provided those funds on its own initiative, and not where a court has ordered a state to pay benefits on the basis of an interpretation that Title XIX requires such payments despite the unavailability of federal funds. Simply put, the payments required of the State by court order were not payments "of assistance within the scope of federally aided public assistance programs."

The district court noted, and the State apparently concedes, that the 1980 explanation of the regulation "appear[ed] to exclude the availability of [federal funds] in the circumstances of this case." 583 F.Supp. at 1380 n. 2. The court nevertheless refused to adopt this interpretation of the regulation because it was a *post hoc* rationalization offered after the issues in the current case arose. *Id.* The Supreme Court has held, however, that even agency regulations promulgated in response to a suit are generally entitled to deference. *United States v. Morton,* —— U.S. ——, —— n. 21, 104 S.Ct. 2769, 2777 n. 21, 81 L.Ed.2d 680, 692 n. 21 (1984). The district court also found that the agency's interpretation of section 205.10 rendered it "superfluous," reasoning that the "regulation was designed to reimburse states for payments under court order where statutory or regulatory authority was either absent or unclear." 583 F.Supp. at 1381. Under the agency's explanation, however, the regulation still applies where a dispute has arisen involving "issues of fact and judgment" regarding a particular beneficiary's entitlement to assistance under the federally approved plan and a court has ordered the State to make payments. 35 Fed.Reg. 8448. The regulation and its accompanying explanations distinguish between cases requiring case-specific factual adjudication after evidentiary hearings and cases involving determinations of the extent of federal participation in the programs. 45 Fed.Reg. 24878. Such a distinction does not render the regulation "superfluous." The agency's interpretation of the regulation is entitled to great deference, and "must be upheld unless it is so plainly erroneous or so inconsistent with the regulation or the statute authorizing the regulation that its decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *South Georgia Natural Gas Co. v. FERC,* 699 F.2d 1088, 1090 (11th Cir.1983). We find nothing that renders

the agency interpretation of its regulation unreasonable.

 Second, even if the regulation were applicable to the situation at hand, it can have no effect in the face of a subsequent contrary legislative enactment. We agree with the court in *State of Illinois v. U.S. Dep't of HHS:*

> The obvious flaw in [the State's] argument is that a regulation, like § 205.-10(b)(3), cannot displace a valid statutory provision, like the Hyde Amendment. To the extent that § 205.10(b)(3) is inconsistent with the specific federal funding restrictions contained in the Hyde Amendment, we cannot give effect to § 205.-10(b)(3).

594 F.Supp. at 155. This reasoning is in accordance with the well established rule that an agency regulation which conflicts with a statute passed by Congress is without any legal effect. *See, e.g., United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977); *see also Florida Gas Transmission Co. v. FERC,* 741 F.2d 1307, 1309–10 (11th Cir. 1984). The district court erred in relying on 45 C.F.R. § 205.10(b)(3) in granting summary judgment for the State.

Absent a court order against it or any controlling law or regulation, HHS cannot be compelled to pay federal funds contrary to the Hyde Amendment to reimburse the State for funds it expended for medically necessary abortions performed during the period when the State was required to fund such abortions pursuant to court order.

REVERSED.