WILLIAM PRYOR, Circuit Judge, concurring: I concur fully in the majority opinion, but I write separately to highlight the irony of our earlier precedent when viewed in the light of the history of the Seventh Amendment. The precedent we overrule today, Mays v. United States, prevented juries from resolving factual disputes when a taxpayer offered only a self-serving affidavit in support of his position. 768 F.2d 1295, 1297 (11th Cir. 1985). As the majority opinion explains, that rule had no basis in law. But it also flouted the history of the right to a jury trial in civil cases. In the decades before the American Revolution, Parliament developed procedures to enforce its revenue measures by evading colonial juries. See 1 Julius Goebel, Jr., History of the Supreme Court of the United States 85-86 (Paul A. Freund ed., 1st ed. 1971); Philip Hamburger, Is Administrative Law Unlawful? 150 (2014). England had struggled tó enforce its trade laws in the colonies, and colonial officials in America blamed local juries for refusing to be impartial in customs disputes. See Carl Ubbelohde, Vice-Admiralty Courts and the American Revolution 15 (1960). In response, Parliament expanded the jurisdiction of admiralty courts, wíiich sat without juries, to include trade cases that would have been tried by a jury in England. See Ubbelohde, supra at 15-16, 21. Later, seeking to extract more revenue from the colonies, Parliament enacted the Sugar Act for “the improvement of ‘the Revenue of th[e] Kingdom’ ” and extended the power of customs officials, at their discretion, to “channel cases into admiralty courts, and so to eliminate jury trial.” Goebel, supra at 85-86 (quoting 4 Geo. 3, c. 15 (Eng. 1764)); see also Caleb Nelson, The Constitutionality of Civil Forfeiture, 125 Yale L. J. 2446, 2463 (2016). And the Stamp Act, 5 Geo. 3, c. 12 (Eng. 1765), provided that customs officials could enforce not only the stamp tax, but also “revenue acts in general” in the juryless admiralty courts. Goebel, supra at 86. Colonial Americans vehemently objected to these measures, and the denial of the right-to a jury in tax cases became a chief complaint animating the American Revolution. The “colonies formed a Congress to protest ‘the tyrannical acts of the British Parliament.’” Hamhurger, supra at 150 (quoting Resolutions of the Stamp Act Congress (Oct. 19, 1765)). The Stamp Act Congress declared that “trial by jury, is the inherent and invaluable right of every British subject in these colonies.” Resolutions of the Stamp Act Congress (Oct. 19, 1765), in Select Charters and Other Documents Illustrative of American History 1606-1775, at 315 (William MacDonald ed., MacMillan & Co. 1906). And it denounced “extending the jurisdiction of the courts of admiralty beyond its ancient limits” because of its “manifest tendency to subvert the rights and liberties of the colonists.” Id. In the Declaration of Independence, Americans cited the “depriv[ation] in many cases, of the benefit of Trial by Jury” as .one of the “Usurpations” committed by King George III that they would no longer tolerate. The Declaration of Independence paras. 2, 20 (1776). The failure to guarantee the right to a jury trial in civil cases almost prevented the ratification of the Constitution. In attempting to persuade New York to ratify the Constitution, Alexander Hamilton acknowledged “[t]he objection” that had “met with most success” in his home state and “several of the other states” was “the want of a constitutional provision for the trial by jury in civil cases.” The Federalist No. 83, at 558 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). And he discussed the specific argument that the civil jury is a necessary “safeguard against an oppressive exercise of the power of taxation.” Id. at 563. As Justice Story later explained, Americans decided that it was not enough that Congress had the authority “to provide in all cases for the trial by jury.” United States v. Wonson, 28 F. Cas. 745, 750 (C.C. Mass. 1812) (No. 16,750). The defenders of the Constitution prevailed in the ratification debates only after promising an amendment that guaranteed the right to trial by jury in civil cases. Stanton D. Krauss, The Original Understanding of the Seventh Amendment Right to Jury Trial, 33 U. Rich. L. Rev. 407, 412-13 (1999). Americans then enshrined that right in the Seventh Amendment. U.S. Const. Amend. VII. Our precedent in Mays lost sight of the historical basis for the right to a civil jury when it denied a taxpayer a jury trial if all he offered in his favor was a self-serving affidavit to rebut official records of his delinquency. In so doing, Mays ousted the jury from its historical role in the exact context—the enforcement of tax laws— that prompted the founding generation to adopt the Seventh Amendment in the first place. Today, we rectify that error.