[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12839

Non-Argument Calendar

_____

DEVENDRA GUMMALA,

Petitioner,

versus

U.S. DEPARTMENT OF LABOR,
CARNIVAL CORPORATION,

Respondents.

_____

Petition for Review of a Decision of the
Department of Labor
Agency No. 2018 - 053

_____

Before LUCK, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Broadly speaking, the Seaman's Protection Act prohibits employers from discharging "seamen" because they report suspected safety violations. *See* 46 U.S.C. § 2114(a)(1). Devendra Gummala alleged that his former employer, Carnival Corporation, violated the Act by firing him as an onboard cruise ship photographer in retaliation for his safety complaints. The United States Department of Labor dismissed Gummala's complaint because he was not a "seaman" under the Act. After careful consideration of the administrative record and the parties' briefs, we deny his petition for review of the Department's final decision.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

From September 11, 2011, to June 12, 2014, Gummala worked for Carnival Corporation's Carnival Cruise Line division as a photographer aboard the cruise ship Fascination. Carnival Corporation was incorporated under the laws of Panama. The Carnival Cruise Line division had offices in Florida, where Carnival Corporation had its headquarters.

In November and December 2013, Gummala used Carnival's website to file complaints about safety violations. The human resources department told Gummala that if the investigation into the violations was going to be successful, he could not remain anonymous. After "everyone within the [photography]

department" became aware that Gummala had complained, he was segregated from his team, managers confronted and threatened him, and he was offered a transfer to another ship. On June 12, 2014, Carnival fired Gummala because, it claimed, he had a bad performance review and the shipboard manager recommended that he be terminated.

On June 22, 2014, Gummala submitted a complaint through the Department's website. In the online form, Gummala identified his employer as "Carnival Cruise Lines." Thus, the respondent in this action was initially mislabeled "Carnival Cruise Lines, Inc." The Department construed Gummala's complaint as "alleg[ing] that [Carnival] terminated [him] in retaliation for making a safety complaint to [Carnival] regarding a housekeeping hazard," in violation of the Act.

Because the Act did not define "seaman," the Department defined it using the interim final rule implementing the Act. *See* 29 C.F.R. § 1986.101(m) (2013) (defining "seaman" as "any individual engaged or employed in any capacity on board a vessel owned by *a citizen of the United States*" (emphasis added)). The Department found that the "[r]espondent, Carnival Cruise Lines, Inc., [was] a Florida corporation and a wholly owned subsidiary of Carnival Corporation, a Panamanian corporation," so Carnival Cruise Lines, Inc., was not a "citizen of the United States" under the Act and, thus, Gummala could not be a "seaman." *See id.* § 1986.101(d) (2013) (defining "[c]itizen of the United States" to include a corporation that meets seven criteria, including that "[t]here is no

contract or understanding by which the majority of the voting power in the corporation may be exercised, directly or indirectly, in behalf of a person not a citizen of the United States" and that "[the corporation] is incorporated under the laws of the United States or a [s]tate"). Having concluded that Gummala was not a covered seaman, the Department dismissed his case.

Gummala requested a hearing with an administrative law judge and made three arguments explaining why he was a "seaman" under the Act. First, he cited Supreme Court and Fifth Circuit authority and the Department's website for definitions of "seaman" that did not depend on the employer's United States citizenship. Second, he disputed Carnival Corporation's status as a non-United States citizen because, despite its Panamanian registration, the "majority of its board of directors as well as executives," including its chief executive officer and chairman of the board, were United States citizens according to its corporate website. Third, he maintained that Carnival's legal team "admit[ted]" that his case fell within the jurisdiction of the United States Coast Guard, "which mean[t] [he was] a seaman according to [United States] laws."

The administrative law judge issued an order to show cause requesting briefing on the retroactive application of the 2016 amendment to 29 C.F.R. section 1986.101(d), which broadened the definition of "citizen of the United States" to encompass any corporation that had a principal place of business or base of operations in a state. *See* 29 C.F.R. § 1986.101(d) (2016) ("Citizen of the United States means an individual who is a national of the United States

20-12839                Opinion of the Court                5

. . . . ; a corporation incorporated under the laws of the United States or a State; a corporation, partnership, association, or other business entity if the controlling interest is owned by citizens of the United States or whose principal place of business or base of operations is in a State; or a governmental entity of the Federal Government of the United States, of a State, or of a political subdivision of a State. The controlling interest in a corporation is owned by citizens of the United States if a majority of the stockholders are citizens of the United States."). After briefing, the administrative law judge concluded that the regulation did not apply retroactively because the amendment did more than merely clarify existing law and, if applied here, would impair Carnival Corporation's rights. Applying the version of 29 C.F.R. section 1986.101(d) (2013) governing at the time Gummala was fired, the administrative law judge concluded that he was not a "seaman" under the Act and dismissed his complaint.

Gummala appealed the administrative law judge's decision to the administrative review board. The focus of the dispute before the board was whether the regulation's 2016 definition of "citizen of the United States" applied retroactively.

Gummala argued that it did for three reasons. First, under 29 C.F.R. section 1986.101(r), "[a]ny future amendments" to the Act affecting a definition in 29 C.F.R. section 1986.101 would apply

instead of the definition in the regulation.[1]  Second, the regulation was procedural, not substantive, and regulated secondary conduct, so its retroactive application would not produce retroactive effects impairing Carnival Corporation's rights.  Third, the amendment merely clarified the previous definitions and did not change anything substantively.

The board rejected these arguments because section 1986.101(r) dealt with the relationship between the Act and its implementing regulations, not between different versions of the regulations; because, even if procedural, the 2016 definition of "citizen of the United States," if applied, "would create retroactive effects by attaching new legal consequences" to past conduct; and because the administration itself described the definition as part of its decision to "make . . . changes," not to clarify.  Gummala filed a motion for reconsideration, which the board denied.[2]

---

[1] The regulation Gummala quoted, 29 C.F.R. section 1986.101(r), provides that "[a]ny future amendments to [the Act] that affect the definition of a term or terms listed in this section will apply in lieu of the definition stated herein." 29 C.F.R. § 1986.101(r).

[2] We asked the parties to address a jurisdictional question about whether the administrative review board's decision was the final agency decision for purposes of our jurisdiction under the Act.  After reviewing the parties' responses, we agree with them that it is and that we have jurisdiction to consider the petition for review.

## STANDARD OF REVIEW

Under the Administrative Procedures Act, we review "agency action[s], findings, and conclusions" to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also* 46 U.S.C. §§ 2114(b), 31105(d) (incorporating the APA into the Seaman's Protection Act). And we review the Department's legal conclusions de novo. *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1132 (11th Cir. 2012).

## DISCUSSION

The only issue on appeal is whether the administrative review board erred when it decided that the 2016 definition of a "citizen of the United States" did not apply retroactively. Carnival is not a United States citizen—and Gummala is not a seaman—under the 2013 definitions, but Carnival is—and Gummala is—under the 2016 definitions. Accordingly, Gummala has a viable claim under the Act only if the 2016 regulation, and specifically its new, broader definition of "citizen of the United States" for corporations, applies retroactively.

Gummala makes four arguments for retroactive application. First, he argues that, by its plain meaning, 29 C.F.R. section 1986.101(r) demonstrates a "clear congressional intent" that the Act's definitions apply retroactively. Second, the Act's definition of "seaman" is broader than the Jones Act's definition, he claims, and because he is a seaman under the Jones Act, he is a seaman under

the Act.  Third, he contends that the effect of a retroactive applica-
tion on Carnival would be minimal because Carnival's conduct
would not be illegal; rather, application "would only alter whether
[Gummala] may continue to bring a lawsuit in this jurisdiction."
Fourth, according to him, not applying the definition retroactively
would defeat the Act's main purpose of encouraging the reporting
of safety violations and would fail to serve the interests of fairness
and justice.  He points to his own case—and its hard-taught lesson
that reporting safety violations "is not worth losing your job" or
suffering the ensuing "hardships and stress"—to make this final ar-
gument.

The presumption against retroactivity "is deeply rooted in
our jurisprudence," *Landgraf v. USI Film Products*, 511 U.S. 244,
265 (1994), and "has consistently been explained by reference to the
unfairness of imposing new burdens on persons after the fact," *id.*
at 270.  This presumption applies not only to statutes but also to
regulations.  "Retroactivity is not favored in the law.  Thus, con-
gressional enactments and administrative rules will not be con-
strued to have retroactive effect unless their language requires this
result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208
(1988)); *see also Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337,
1351 (11th Cir. 2005) ("Retroactive application of administrative
rules is highly disfavored, and they will not be construed to have
retroactive effect unless their language requires this result." (quo-
tation marks omitted)).  Because "an administrative agency's
power to promulgate legislative regulations is limited to the

20-12839               Opinion of the Court                    9

authority delegated by Congress," an agency may issue regulations with retroactive effect only if Congress, "in express terms," empowers the agency to do so. *Bowen*, 488 U.S. at 208.

There is nothing in the 2016 definition of "citizen of the United States" in 29 C.F.R. section 1986.101(d), or the language of the amendment, that requires that it be applied retroactively. *See* 81 Fed. Reg at 63396-401. Indeed, there is strong evidence that the Department did not wish for the regulation redefining "citizen of the United States" to have retroactive application: The administration set an effective date of September 15, 2016, for the regulation, *see* Procedures for the Handling of Retaliation Complaints Under the Employee Protection Provision of the Seaman's Protection Act, as Amended, 81 Fed. Reg. 63396, 63396 (Sept. 15, 2016) (codified at 29 C.F.R. pt. 1986), and "[t]here is no point in specifying an effective date if a provision is to be applied retroactively," *Sierra Club*, 430 F.3d at 1351.

Also, the Act does not contain an express delegation of power from Congress to the Department regarding regulations, let alone a delegation to promulgate retroactive regulations. *See* 46 U.S.C. § 2114. Nor do the parts of the Surface Transportation Assistance Act that are incorporated into the Act. *See* 49 U.S.C. § 31105(b)–(d). Thus, even if the Department intended to apply the 2016 definition retroactively, Congress did not give it the power to promulgate retroactive regulations under the Act.

We are mindful that an "administrative regulation does not operate retroactively merely because it applies to prior conduct;

rather, [it] has retroactive effect if it 'would impair rights a party possessed when [the party] acted, increase [the party's] liability for past conduct, or impose new duties with respect to transactions already completed.'" *Ga. Power Co. v. Teleport Communs. Atlanta, Inc.*, 346 F.3d 1033, 1042 (11th Cir. 2003) (quoting *Landgraf*, 511 U.S. at 280). However, if we applied the 2016 definition of United States citizen to Carnival's 2014 conduct, that is exactly what would happen here—Carnival would be a citizen of the United States, Gummala would be a seaman, and a viable claim might lie against Carnival under the Act, meaning that Carnival's rights would be impaired, liabilities would be increased, and duties would be expanded. This is so because the 2016 definition marks a major shift in the number and kind of corporations that qualify as citizens under the Act.

Applying the 2016 definition to earlier conduct would mean "new and unforeseen legal consequences" for corporations like Carnival that were incorporated outside the United States but headquartered in it. *Rendon v. U.S. Att'y Gen.*, 972 F.3d 1252, 1263 (11th Cir. 2020) (holding that a law has retroactive effect when it "attaches new legal consequences to events completed" before it (quoting *Vartelas v. Holder*, 566 U.S. 257, 273 (2012))). In other words, retroactive application of the regulation would produce retroactive effects.

Gummala's arguments that we should apply the definition retroactively are unavailing. First, because 29 C.F.R. section 1986.101(r) is a regulation issued by the administration, not a

20-12839                Opinion of the Court                    11

statute enacted by Congress, it cannot tell us about Congress's intent regarding retroactivity. *See United States v. Bd. of Trs. for Univ. of Ala.*, 908 F.2d 740, 747 (11th Cir. 1990) ("[Federal agency] regulations are not conclusive on the issue of Congressional intent."). Even if it could, section 1986.101(r) says that if Congress amends the Act and the amendment affects one of the definitions in section 1986.101—for example, if the Act, as amended, supplies a statutory definition for "seaman"—then the Act's definition trumps the regulation's. 29 C.F.R. § 1986.101(r). This is an unremarkable proposition. *See Ga. by Dep't of Med. Assistance v. Heckler*, 768 F.2d 1293, 1299 (11th Cir. 1985) (describing "the well established rule that an agency regulation which conflicts with a statute passed by Congress is without any legal effect"). Section 1986.101(r) does not indicate any congressional intent, much less clear congressional intent, that the regulation's definitions apply retroactively.

Gummala's other arguments fare no better. Neither the Act nor the regulation defining its terms refers to the Jones Act at all, *see* 46 U.S.C. § 2114; 29 C.F.R. § 1986.101, and thus, the Jones Act cannot help us interpret "seaman" as that term is used in the Act.[3]

---

[3] The Department referred to the Jones Act, and to how the definition of "seaman" under the Act was broader than that under the Jones Act, in its discussion of the 2013 definitions. *See* Procedures for the Handling of Retaliation Complaints Under the Employee Protection Provision of the Seaman's Protection Act (SPA), as Amended, 78 Fed. Reg. 8390, 8394 (Feb. 6, 2013). However, as the Department explains, the definition of "seaman" in the Act was meant to be broader only in some respects not relevant here, not in all

Retroactive application would expose Carnival and other corporations to unexpected liabilities, as discussed above, so the effect would be more than minimal. And when we are dealing with retroactivity, the fairness and justice with which we are primarily concerned is that counseling against the disruption of settled expectations. *See Landgraf,* 511 U.S. at 265 ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."). We agree with the Department that, although the 2016 definitions "better effectuate the [Act] than their predecessor[s]," the "good reasons for revising the definitions do not cure the unfairness that would result if the revised definitions were applied to previously-filed cases."

For these reasons, we deny Gummala's petition for review.

**PETITION DENIED.**

---

respects. *See id.* ("[The Act] and the Jones Act are fundamentally different types of statutes that need not be squarely consistent in their coverage."). Importantly, the regulation defines the Act's terms without reference to the Jones Act.